UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CATHERINE BECKETT                                    CIVIL ACTION

VERSUS                                                        NO. 12-910

RONAL W. SERPAS ET AL.                         SECTION "N" (2)

## ORDER AND REASONS ON MOTION

Plaintiff Catherine Beckett, a former New Orleans Police officer, brought this action pursuant to 42 U.S.C. § 1983 and Louisiana state law, alleging that defendants Ronal W. Serpas, the Superintendent of the New Orleans Police Department ("NOPD"), and the City of New Orleans violated her federal and state constitutional free speech rights. Specifically, Beckett alleges that defendants terminated her employment in retaliation for her having testified in the defense of another NOPD officer, who was one of five NOPD officer defendants in a federal criminal prosecution in this court, United States v. David Warren et al., Crim. Action No. 10-154. Pending before me is a motion to quash or, alternatively, for a protective order filed by the United States Department of Justice (the "Department") on behalf of Assistant United States Attorney Tracey Knight. Record Doc. No. 63.

Knight is one of the prosecuting attorneys in the Warren case. Neither she nor the Department is a party in the instant case. Beckett served a subpoena to depose Knight. The Department declined to authorize Knight to testify and filed the instant motion to quash the subpoena or, alternatively, delay the deposition.

Plaintiff filed a timely memorandum in opposition to the Department's motion. Record Doc. No. 66. The Department received leave to file a reply memorandum. Record Doc. Nos. 67, 68, 69.

Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, IT IS ORDERED that the motion is GRANTED IN PART AND DENIED IN PART, as explained below, and that Knight's deposition must proceed with the modifications to deposition topics 4 and 5 set forth in this order.

I.     FACTUAL AND PROCEDURAL BACKGROUND

The criminal prosecution of former NOPD officers David Warren, Dwayne Scheuermann, Gregory McRae, Robert Italiano and Travis McCabe was a highly publicized case that arose from the death of Henry Glover in New Orleans a few days after Hurricane Katrina and of the subsequent alleged police cover-up. A single jury trial of all five defendants was conducted from November 8 through December 9, 2010. Italiano, who had called Beckett as a witness, and Scheuermann were acquitted of the charges against them. The other three defendants were convicted on various counts.

The district court granted McCabe a new trial in May 2011. In December 2012, the United States Court of Appeals for the Fifth Circuit vacated Warren's convictions and remanded for a new trial. When the United States filed the instant motion, the two criminal re-trials were scheduled for dates in March 2013, but they were recently

continued to August 26, 2013 for Warren and September 23, 2013 for McCabe.  Record

Doc. Nos. 664, 665, 666 in Crim. Action No. 10-154.

Serpas announced publicly on December 16, 2010 (see Press Release previously

filed in the record, Record Doc. No. 35-3) that he had received a briefing from federal

authorities regarding Glover's death and that he had decided to place plaintiff and five

other NOPD officers on administrative reassignment pending an internal investigation

of their conduct.  Following the investigation, Serpas terminated Beckett's employment

on November 17, 2011.  Plaintiff alleges that Serpas's stated reasons for terminating her,

which were that she had violated three NOPD rules, were a pretext for retaliation and that

other police officers who had testified favorably to the prosecution in the same criminal

trial were not disciplined, despite having also violated NOPD rules.

Beckett subpoenaed Knight to testify at a deposition in this action.  In compliance

with the Department's "Touhy regulations,"[1] Beckett's attorney, Brett Prendergast,

provided the Department with an affidavit stating that he will depose Knight regarding

six (6) topics:  (1) her knowledge of the meeting between Serpas, other members of the

NOPD and members of the Department during the week of December 13, 2010; (2) her

---

[1] In U.S. ex rel. Touhy v. Ragen, 340 U.S. 462, 469-70 (1951), the Supreme Court "held that the precursor of the Justice Department regulations cited [by the Justice Department in the instant case] was valid and that a court could not enforce a subpoena against a Justice Department employee who had been ordered by departmental superiors not to comply with the subpoena." Louisiana v. Sparks, 978 F.2d 226, 229 n.5 (5th Cir. 1992).  There is no dispute in the instant case that the regulations are valid and that Beckett complied with them.

knowledge of any other meetings between members of the NOPD and the Department that involved possible disciplinary action to be taken against members of the NOPD as a result of allegations of misconduct against them related to the <u>Warren</u> case; (3) her knowledge of any other communications between the NOPD and Department that involved possible disciplinary action to be taken against members of the NOPD as a result of allegations of misconduct against them related to the <u>Warren</u> case; (4) any postings Knight may have made on nola.com or any other website concerning the <u>Warren</u> case or any other matters related to Beckett or other members of the NOPD; (5) Knight's knowledge of the manner by which the Department identified members of the NOPD as to whom it was going to recommend investigation and/or discipline by the NOPD in the aftermath of the <u>Warren</u> verdict; and (6) Knight's educational and employment background, including any prior personal or professional interaction with Beckett. Department of Justice Exh. 1, Record Doc. No. 63-4, Subpoena to Testify at a Deposition in a Civil Action; Department of Justice Exh. 2, Record Doc. No. 63-5, affidavit of Brett Prendergast.  The Department responded by filing the instant motion to quash Knight's deposition or, alternatively, for a protective order postponing the deposition until after the re-trials of McCabe and Warren.

II.    <u>ANALYSIS</u>

A.    <u>The United States Has Waived Its Sovereign Immunity</u>

The Department's <u>Touhy</u> regulations provide procedures and standards that govern the production or disclosure of any material or information in its files or within the knowledge of its employees, acquired by reason of their official duties, when responding to subpoenas issued in litigation to which the Department is not a party.  28 C.F.R. §§ 16.21-16.26.

> (a) In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official in accordance with §§ 16.24 and 16.25 of this part.

<u>Id.</u> § 16.21(a).

> (c) If oral testimony is sought by a demand in any case or matter in which the United States is not a party, an affidavit, . . . by the party seeking the testimony or by his attorney, setting forth a summary of the testimony sought and its relevance to the proceeding, must be furnished to the responsible U.S. Attorney.  Any authorization for testimony by a present or former employee of the Department shall be limited to the scope of the demand as summarized in such statement.

<u>Id.</u> § 16.22(c).  The Department concedes that its <u>Touhy</u> regulations do not create any substantive right, such as a privilege, to decline to comply with Beckett's subpoena.

The Department argues, however, that its sovereign immunity precludes this court from reaching the merits of the Department's refusal to allow Knight to testify in response to Beckett's subpoena.  The Department further contends that Beckett may obtain judicial review of its decision only by filing a separate lawsuit against the United States under the Administrative Procedures Act.  5 U.S.C. §§ 701-706.  Beckett responds that, unlike the cases cited by the Department in which the subject subpoenas were issued by a state court, her litigation has proceeded entirely in federal court, where the United States has waived its sovereign immunity.

The Administrative Procedures Act includes a waiver of sovereign immunity for challenges to executive agency decisions:

> A person . . . adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . .

Id. § 702.  Under this standard, "[a]gency actions, findings, and conclusions . . . may be set aside only if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Hasie v. Office of Comptroller of Currency, 633 F.3d 361, 365 (5th Cir. 2011) (citing 5 U.S.C. § § 706(2)(A)).

The majority of the cases cited by the government in support of its sovereign immunity argument involved third-party subpoenas issued by a state court or an

arbitrator, not by a federal court.  In these cases, the United States removed the state court's or arbitrator's orders to federal court, arguing that the state court or arbitrator lacked jurisdiction to issue a subpoena or a contempt order against a nonparty federal employee.  The federal courts in these cases held that the United States had <u>not</u> waived its sovereign immunity as to the underlying state court litigation or arbitration. Therefore, the party who had requested the subpoena could seek review of the agency's refusal to comply with the subpoena by filing a separate action against the agency in federal court under the Administrative Procedures Act.  Such an action is a state court litigant's only recourse.  <u>Sparks</u>, 978 F.2d at 235-36; <u>COMSAT Corp. v. Nat'l Sci. Found.</u>, 190 F.3d 269 (4th Cir. 1999); <u>Swett v. Schenk</u>, 792 F.2d 1447, 1452 (9th Cir. 1986).  These cases are not on point.

The United States' sovereign immunity was implicated in these cases, and judicial review was available only in a separately filed action under the Administrative Procedures Act, because the state court or arbitrator lacked jurisdiction to enforce its subpoena against a federal employee.  As another federal district court explained after reviewing the relevant case law a few months ago,

> the United States, pursuant to 28 U.S.C. § 1442, can remove a subpoena proceeding [from state court] without removing the underlying civil action. . . .
>
> When the United States removes a case to federal court pursuant to 28 U.S.C. § 1442, . . . the <u>jurisdiction of this Court is derivative of the state court's jurisdiction</u>. In 28 U.S.C. § 1442 removal actions, when the "state court lacks jurisdiction over the subject matter or the parties, the federal

court acquires none upon removal, even though in a like suit originally brought in federal court, the court would have jurisdiction."

A subpoena served on a federal official acting in his official capacity is an action against the United States subject to sovereign immunity. When a federal agency has not waived sovereign immunity, the state court (and the federal court after removal) lacks jurisdiction to enforce a state court subpoena against a federal employee acting at the agency's direction. "[W]here a subpoena is issued to a non-party federal government agency in conjunction with litigation in state court, the state court may not enforce the subpoena against the federal government due to federal sovereign immunity, and the federal courts have consistently held that they lack jurisdiction to enforce the subpoena in cases where the government has removed the subpoena proceedings to federal court."

State court litigants that disagree with a federal agency's decision after a Touhy request are not without a remedy. "[T]o obtain federal judicial review of a federal agency's refusal to release information, a state-court litigant must request the [discovery] from the federal agency pursuant to the agency's regulations," and if "the agency refuses to produce the requested [discovery], the sole remedy for the state-court litigant is to file a collateral action in federal court under the APA [Administrative Procedures Act]."FN8

> FN8. The APA creates a right of judicial review and waiver of sovereign immunity to challenge actions by federal agencies and their employees.

Demers v. Buonanno, No. 12-676ML, 2012 WL 5930223, at *4 (D.R.I. Nov. 2, 2012), report & recommendation adopted, 2012 WL 5940568 (D.R.I. Nov. 27, 2012) (quoting Smith v. Cromer, 159 F.3d 875, 879 (4th Cir. 1998); Puerto Rico v. United States, 490 F.3d 50, 57-58, 61 n.6 (1st Cir. 2007)) (citing Arizona v. Manypenny, 451 U.S. 232, 241-42 (1981); Delano Farms Co. v. Cal. Table Grape Comm'n, 655 F.3d 1337, 1343-48 (Fed. Cir. 2011); In re Elko Cnty. Grand Jury, 109 F.3d 554, 556 (9th Cir. 1997); Boron

Oil Co. v. Downie, 873 F.2d 67, 68-69 (4th Cir. 1989); Swett, 792 F.2d at 1450; Clark v. Library of Congress, 750 F.2d 89, 102 (D.C. Cir. 1984)) (emphasis added).

When a subpoena is issued to a nonparty federal employee by a federal court, the courts have generally held that sovereign immunity does not preclude the subpoena and that the party seeking to enforce the subpoena is not required to file a separate suit under the Administrative Procedures Act.  The Court of Appeal for the Fifth Circuit has not ruled on this issue, but Judge Fallon of this court analyzed the case law and explained:

> In EPA v. General Electric Company, the Second Circuit, faced with this exact issue, held that the APA allows the enforcement of a non-party subpoena duces tecum for discovery against the United States through a motion to compel.  197 F.3d 592, 599 (2d Cir. 1999); see also Barnett v. Illinois State Bd. of Illinois, No. 02-2401, 2002 WL 1560013, at *1 (N.D. Ill. July 2, 2002).  But see Landry v. FBI, No. 97-197, 1997 WL 375881, at *1 (E.D. La. July 3, 1997).  In General Electric, the Second Circuit specifically found that section 702 [of the Administrative Procedures Act] did not require a separate APA action and that such a requirement would only create time-consuming additional litigation[,] serve as an unnecessary delay, and place procedure ahead of substance.
>
> Moreover, other courts have also explicitly and implicitly held that federal agencies cannot claim sovereign immunity to avoid compliance with third-party subpoenas.  See, e.g., Linder [v. Calero-Portocarrero, 251 F.3d 178, 180 (D.C. Cir. 2001)]; COMSAT Corp. v. Nat'l Science Found., 190 F.3d 269, 274 (4th Cir. 1999); In re Bankers Trust Co., 61 F.3d 465, 470 (6th Cir. 1995); Exxon Shipping Co. v. Dep't of the Interior, 34 F.3d 774, 778 (9th Cir. 1994); Moore v. Armour Pharmaceutical Co., 927 F.2d 1194, 1197 (11th Cir. 1991); Davis Enterprises v. EPA, 877 F.2d 1181, 1186 (3d Cir. 1989); In re PE Corp. Sec. Litig., No. 00-705, 2005 WL 806719, at *6-7 (D. Conn. Apr. 8, 2005); Moran v. Pfizer, Inc., No. 99-9969, 2000 WL 1099884, at *2 n.1 (S.D.N.Y. Aug. 4, 2000); Phoenix Ins. Co. v. Phillips, No. 99-1945, 2000 WL 680334, at *1 (E.D. La. May 24, 2000); Metrex Research Corp. v. United States, 151 F.R.D. 122, 124 (D. Colo. 1993); In re Bioscience Sec. Litig., 150 F.R.D. 80, 81 (E.D. Pa.

1993).  Some of these courts have found section 702 [of the Administrative Procedure Act's] waiver to be limited by section 706's arbitrary and capricious standard of review; whereas, other courts have found that nothing in the language of section 702 indicates that it only applies to actions brought under section 706 and, as such, have reviewed motions to quash under [Fed. R. Civ. P.] Rule 45's undue burden standard.FN5  See Linder, 251 F.3d at 181.  While there is varied reasoning for each of these respective positions, this Court acknowledges that <u>nearly every court faced with this issue has determined that sovereign immunity does not insulate a federal agency from complying with a Rule 45 subpoena</u>.  This Court agrees.

In re Vioxx Prods. Liab. Litig., 235 F.R.D. 334, 343 (E.D. La. 2006) (emphasis added).

Since In re Vioxx, other district courts have reviewed the reported decisions, distinguished the cases cited by the Department based on the origin of the subpoena in state court or arbitration, ruled that the United States waived sovereign immunity as to third-party subpoenas issued by a federal court and held that the party who requested such a subpoena is not required to file a separate action under the Administrative Procedures Act.  Ceroni v. 4Front Eng'd Solutions, Inc., 793 F. Supp. 2d 1268, 1275-76 (D. Colo. 2011) (citing Watts v. Sec. & Exch. Comm'n, 482 F.3d 501, 508 (D.C. Cir. 2007); Linder, 251 F.3d at 181; Gen. Elec., 197 F.3d at 599; In re Crim. Subpoena Duces Tecum, 162 F.3d 1172, 1998 WL 712663, at *1 (10th Cir. 1998); Houston Bus. Journal, Inc. v. Office of the Comptroller, 86 F.3d 1208, 1211-12 (D.C. Cir. 1996); Moore, 927 F.2d at 1196; Johnson v. Folino, 528 F. Supp. 2d 548 (E.D. Penn. 2007)); In re Packaged Ice Antitrust Litig., No. 08-MD-01952, 2011 WL 1790189, at *2 (E.D. Mich. May 10, 2011) (citing Watts, 482 F.3d at 509 n.*1; Connaught Labs., Inc. v. SmithKline Beecham

10

P.L.C., 7 F. Supp. 2d 477, 479 (D. Del. 1998)); Palmer v. Hawkins, No. 09-mc-0019,

2009 WL 3230750, at *2-3 (W.D. La. Oct. 2, 2009); Johnson, 528 F. Supp. 2d at 550-51

(citing Linder, 251 F.3d at 181; Gen. Elec., 197 F.3d at 599; COMSAT Corp., 190 F.3d

at 274; Exxon Shipping Co., 34 F.3d at 778; Moore, 927 F.2d at 1196).

Accordingly, I find that the United States has waived its sovereign immunity, this

court has jurisdiction over the merits of the Department's decision and Beckett need not

file a separate lawsuit to obtain review of the Department's response to the subpoena.

B.     The Standard of Review Is Unsettled

The Department argues that, even if the court does not agree that plaintiff must file

a separate lawsuit, the arbitrary and capricious standard of review set forth in the

Administrative Procedures Act still applies.  Under that standard, Beckett has the burden

to show that the Department's decision was "arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

> The court's scope of review [under this standard] is very narrow.  The
> court's role is not to weigh the evidence pro and con but to determine
> whether the agency decision was based on a consideration of the relevant
> factors and whether there was a clear error of judgment.  Thus, if the
> agency considers the factors and articulates a rational relationship between
> the facts found and the choice made, its decision is not arbitrary and
> capricious.  The agency's decision need not be ideal, so long as it is not
> arbitrary or capricious, and so long as the agency gave at least minimal
> consideration to relevant facts contained in the record.

Delta Found., Inc. v. United States, 303 F.3d 551, 563 (5th Cir. 2002) (citations and

quotations omitted); accord Hasie, 633 F.3d at 365.  The Department argues that its

11

decision in this matter was based on a rational consideration of the relevant factors and was not arbitrary, capricious or an abuse of discretion.

Beckett contends that the proper standard of review is found in Fed. R. Civ. P. 26(c) and 45(c).   Under these standards, the Department, as the party resisting the subpoena and seeking a protective order, bears the burden to show that the subpoena requires disclosure of privileged material or is unduly burdensome, or that good cause exists for a protective order.   See Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."); Fed. R. Civ. P. 45(c)(iv) ("On timely motion, the issuing court must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.").

Under Rule 45,

[t]he moving party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive.   Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation.   To determine whether the subpoena presents an undue burden, we consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.   Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.

12

Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir. 2004) (quotations and citations omitted).

"Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" In re Terra Int'l, 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978); citing 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice and Procedure § 2035, at 483-86 (2d ed. 1994)) (emphasis added).

The Fifth Circuit has not ruled on the proper standard of review when a private litigant causes the federal court to issue a subpoena to a nonparty federal employee. Although the Department argues that Louisiana v. Sparks, 978 F.2d at 234, indicates that the Fifth Circuit would apply the arbitrary and capricious standard in this case, the Department acknowledges in its reply memorandum that Sparks arose out of a state-court-issued subpoena and "that the Fifth Circuit has not squarely addressed this issue in the context of a federal-court subpoena." Record Doc. No. 69 at p. 2 & n.2. As discussed in the preceding section of this opinion, Sparks does not control in the instant situation. See also Hasie, 633 F.3d at 365, 368-69 (applying arbitrary and capricious standard to judicial review of petitioner's request pursuant to federal agency's Touhy

regulations for records that petitioner sought to use in state court civil litigation, which request the agency had denied).

Recent district court cases have examined the case law and acknowledged that there is a split of authority among the appeal courts that have considered the issue.

> The Fourth and Eleventh Circuits review the agency's decision under the APA's arbitrary and capricious standard because the APA contains the waiver of sovereign immunity that allows review of the decision at all. COMSAT Corp., 190 F.3d 269; Moore, 927 F.2d at 1198.  On the other hand, the D.C. and Ninth Circuits conduct an analysis under Federal Rule of Civil Procedure 45, balancing the interests favoring disclosure against the interests asserted against disclosure.  Linder, 251 F.3d at 181-82; Exxon, 34 F.3d at 780.  The Second Circuit initially adopted the arbitrary and capricious standard, but, on reconsideration, vacated its decision and reserved the question for the future.  Gen. Elec., 212 F.3d 689, 689-90 (2000), amending 197 F.3d 592 (2d Cir. 1999).

Johnson, 528 F. Supp. 2d at 551; accord Ceroni, 793 F. Supp. 2d at 1276-77; Solomon v. Nassau Cnty., 274 F.R.D. 455, 458 (E.D.N.Y. 2011); In re Vioxx, 235 F.R.D. at 344; see also Watts, 482 F.3d at 508 (the most recent decision by any appellate court, decided by the D.C. Circuit in 2007, holding that Rule 45 provides the standard of review).

Some district courts, lacking guidance from their own circuit court of appeal, have adopted one or the other standard used in other circuits.  The majority of the "more recent decisions have held that an agency's denial of a Touhy request, as with any objection to a third party subpoena, is properly analyzed under Federal Rules of Civil Procedure 26 and 45."  Solomon, 274 F.R.D. at 458; see also In re Packaged Ice Antitrust Litig., 2011 WL 1790189, at *2 ("This Court concludes that the Sixth Circuit would join the opinions

of those courts, mostly in this century, that have concluded that Federal Rule of Civil Procedure 45 and various available privilege rules provide sufficient limitations on discovery to adequately address legitimate governmental interests in objecting to a motion to compel compliance with a valid federal court subpoena."); but see Palmer, 2009 WL 3230750, at *3 ("The court is not persuaded that the Fifth Circuit has made any clear choice on the issue, but it is persuaded that the courts that have applied the APA standard have the better argument.").

Other district courts have declined to decide the question and have analyzed the case before them either under both standards where both would lead to the same result, e.g., Solomon, 274 F.R.D. at 458; In re Vioxx, 235 F.R.D. at 344; or under whichever standard is more favorable to the ultimately losing party, since the result would presumptively be the same under the other standard that is less deferential to that party. E.g., Ceroni, 793 F. Supp. 2d at 1278-79; Johnson, 528 F. Supp. 2d at 551.

The Department argues that the same facts on which it relies for its argument under the Administrative Procedure Act that its decision was not arbitrary or capricious also satisfy its burden if the court applies the undue burden and good cause standards of Rules 26(c) and 45(c). Like the Ceroni and Johnson courts, I decline to decide which standard the Fifth Circuit would adopt. I will apply the APA standard, which is more deferential to the Department.

15

C.     The Motion Is Granted in Part and Denied in Part

"'For more than three centuries it has now been recognized as a fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right to every man's evidence.'"  United States v. Auster, 517 F.3d 312, 315 (5th Cir. 2008) (quoting United States v. Bryan, 339 U.S. 323, 331 (1950)).

Even under the more deferential standard of the Administrative Procedure Act, I find that the Department has acted arbitrarily and abused its discretion in refusing to produce Knight to testify about the topics listed in Prendergast's affidavit.   The Department has produced no evidence to support its factual allegations or its decision-making process.  It has failed to articulate a rational relationship between the facts found and the choice made.  Delta Found., Inc., 303 F.3d at 563.

In a tortured argument, the Department contends that its Touhy regulations require it to consider plaintiff's subpoena "under relevant substantive law concerning privilege." 28 C.F.R. § 16.26(a)(2).  The agency acknowledges that it is not claiming that the testimony sought is "privilege[d] per se," but it cites the "advocate/witness rule," which deplores the "'professional impropriety of assuming the dual role of advocate and witness in a single proceeding.'"  Justice Department's memorandum in support, Record Doc. No. 63-3 at p. 8 (quoting United States v. Johnson, 690 F.2d 638, 642 (7th Cir. 1982)). The Department then concedes that Knight has not been subpoenaed to testify in the Warren and McCabe cases and that she is not an advocate in the instant case, so that there

16

is no single proceeding.  The "advocate/witness rule," if such a rule exists in the Fifth Circuit, therefore does not apply in this case.

The crux of the Department's arguments is that Knight is a prosecutor in the pending re-trials of Warren and McCabe; that Beckett seeks testimony regarding Beckett's and Knight's roles in the prior, single trial of all five criminal defendants; and that Knight's "testimony necessarily foreshadows issues, facts, and events implicated in the upcoming criminal re-trials." Justice Department's memorandum in support, Record Doc. No. 63-3 at pp. 8-9.  However, it is undisputed that Italiano subpoenaed Beckett to testify and that she testified solely regarding a conversation that she had had with another former police officer, Reilly, in which Reilly admitted having lied to the grand jury regarding Italiano's actions.  Italiano was acquitted.  Beckett asserts in her opposition memorandum that she has no interest in obtaining information from Knight about the pending re-trials or about Knight's opinion work product, except as it relates to information that Knight already shared with the NOPD in 2010.  Beckett's list of deposition topics, as modified by this court, supports those assertions.

The Department has presented neither evidence nor plausible argument that Beckett will be a witness at the re-trial of McCabe or Warren or that any of the issues presented in her employment retaliation action or her proposed deposition topics will arise in those criminal trials.  In the Department's memorandum, it cites Warren's then-pending motion in his criminal proceedings to recuse Judge Africk, based in part on the

17

judge's allegedly hostile reaction to Beckett's testimony that "'she did not trust the Department of Justice or the FBI.'"  Warren's Motion for Recusal in Crim. Action No. 10-154, Record Doc. No. 640, at p. 3 (quoting trial transcript at p. 3756).   The Department states that Warren has also "signaled . . . his intent to seek recusal of prosecutors from his re-trial" based on alleged prosecutorial misconduct.   The Department argues that allowing Knight to testify in the instant civil action "concerning matters potentially at issue in the criminal case" implicates the advocate/witness rule and "creates . . . an incentive for criminal defendants and those aligned therewith (i.e., Beckett as a defense witness) to use the liberal discovery rules to advance arguments in a criminal matter."  Justice Department's memorandum in support, Record Doc. No. 63-3, at p. 9.

The Department relies on mere speculation about potential effects of Knight's testimony.  Beckett testified at the first trial under subpoena from Italiano, concerning a conversation that she and Reilly had about Italiano only.  Beckett does not appear to be "aligned" with either Warren or McCabe, the only two defendants who will be re-tried.  As to Warren's motion to recuse Judge Africk, Beckett's testimony is a matter of public record, to which Beckett herself could add nothing.  She asserts in her opposition memorandum that neither she nor her attorney has been "contacted by Mr. Warren's counsel seeking any information or cooperation relative to the Motion to Recuse."  Plaintiff's memorandum, Record Doc. No. 66, at p. 12.

18

None of plaintiff's proposed deposition topics appear to implicate Warren's motion to recuse, which has been denied since the instant motion and opposition were filed. Judge Africk held that his courtroom actions during Beckett's testimony consisted of "ordinary intrajudicial evaluation" and that "it is well established that expressions of impatience, dissatisfaction, annoyance, and even anger do not establish bias or partiality." Order and Reasons, Record Doc. No. 653 in Crim. Action 10-154, at p. 8 (quotation and citation omitted). The judge found "no objective or subjective reason to believe that this Court cannot provide a fair forum with respect to any allegations of prosecutorial misconduct." Id. Accordingly, Warren's no-longer-pending motion to recuse is not a reason to deny authorization for Knight to testify in this civil action.

The Department next argues that, when a prosecutor's testimony as a witness is sought in the same criminal proceeding that she is prosecuting (which admittedly is not the situation before this court), courts have required the requesting party to exhaust other available sources of information and/or demonstrate a compelling need for the attorney's testimony. The Department contends that Beckett must exhaust other available sources of information before seeking Knight's testimony here.

Plaintiff states in her opposition that she has already deposed former Assistant United States Attorney Sal Perricone regarding the same list of topics she has proposed for Knight's deposition. Perricone testified that he attended the December 2010 meeting with Knight, Serpas and NOPD Deputy Superintendent Arlina Westbrook. Beckett

19

asserts that Perricone testified that he was present at the meeting to discuss NOPD training, not the <u>Warren</u> matter. Plaintiff states that Perricone's recollection of the meeting was "spotty," but he testified that the meeting was related to the "unhappiness" of the <u>Warren</u> trial team, including Knight, with the trial testimony of certain NOPD officers. Plaintiff's memorandum, Record Doc. No. 66 at p. 6. In response to the Department's assertion that Knight's testimony would be superfluous because plaintiff can obtain the information she needs from defendants, Beckett notes that she is "naturally skeptical of anything defendant Serpas and his subordinates will represent" at their depositions. There is ample basis in the public record of this court for all parties also to be skeptical of Perricone's testimony,[2] while no similar questions exist regarding

---

[2]Perricone resigned after the revelation that he had repeatedly posted sometimes critical and vitriolic, pseudonymous comments on nola.com about pending criminal investigations and prosecutions of NOPD officers in <u>Warren</u> and <u>United States v. Kenneth Bowen et al</u>., Crim. Action No. 10-204"N." The convicted <u>Bowen</u> defendants then moved for a new trial. The presiding district judge conducted an investigation that included requiring Perricone to testify under oath before him. Judge Engelhardt's extensive opinion quoted Perricone's postings about the NOPD and its officers while they were under investigation and on trial, his post-resignation comments in a magazine interview, his own testimony and the sworn testimony of another Assistant United States Attorney. Judge Engelhardt concluded that "Perricone testified falsely in at least some important respects." Order and Reasons, Record Doc. No. 1070, at p. 27. The judge cited multiple examples of testimony that were not worthy of belief. <u>See id.</u> ("[N]o one, especially this Court, could reasonably find [Perricone] credible" that he did not know that First Assistant United States Attorney Jan Mann was also commenting online about the same news articles as Perricone. "To even think as much strains credulity beyond the breaking point."); <u>id.</u> at p. 28 ("The undersigned finds it inconceivable that Perricone did not know, at the time he gave sworn testimony, that 'eweman' [Mann's online pseudonym] was seated only two chairs away . . . . The undersigned also finds Perricone's testimony highly questionable regarding his use of the [online] name 'campstblue.'. . . [Perricone's] tenuous explanations seem only designed to afford him an escape hatch from some of his most egregious postings . . . . Perricone's questionable testimony regarding his postings as 'campstblue' does not end here."); <u>id.</u> at p. 31 ("Given these troubling aspects of Perricone's sworn testimony, the Court must question the credibility of such testimony. Rather, Perricone's admitted motivation appears to be designed to insulate others . . . from responsibility. . . . We now know that [Perricone's] assertion, which was repeated in substance in his sworn testimony, is very likely false.");

Knight's veracity or ability to recall what transpired at the meeting.  The Department's

unsworn, unsupported representation in its memoranda that it did not make

recommendations regarding official discipline against Beckett or other witnesses in the

Warren trial is insufficient to establish that Knight does not have discoverable

information.   Knight's testimony may fill in the gaps left by Perricone's testimony,

without the accompanying skepticism, and may differ in some respects from defendants'

recollections.   Under these circumstances, Perricone's testimony is not a reasonable

alternative available source of information or substitute for Knight's testimony.   In

addition, Knight may provide a more objective perspective than defendants'

recollections, and her deposition is necessary to plaintiff's case.

_____

id. at p. 33 ("Aside from the ugly tincture they have placed on the otherwise good name of the U.S. Attorney's Office, the Court is also concerned that the activities of Perricone . . . , both those of commission and those of omission, might also constitute prosecuteable criminal conduct."); id. at p. 33 n.29 (Perricone's "activities before this Court, however, including inter alia apparent false testimony/statements (by commission or omission), suborning false testimony, and making false statements to a federal judge, bear further serious inquiry.").  Additional allegations and concerns about Perricone's interactions with the NOPD appear in the record of United States v. City of New Orleans, Civil Action No. 12-1924"E," in which the Justice Department sued the City over the NOPD's allegedly unconstitutional practices.  The City moved to vacate a consent decree that it had negotiated through Perricone, who was the Department's "point person" in negotiations.  Civil Action No. 12-1924, Record Doc. No. 175-1, at p. 2.  Perricone had applied to be Superintendent of Police in 2010, but did not get the job.  The City alleges that he made numerous negative pseudonymous comments online about the mayor, Superintendent Serpas and the NOPD, while the Department investigated causes of corruption in the NOPD and Perricone negotiated the consent decree.  The City quotes some of Perricone's online comments and has attached to its memorandum "hundreds of comments" that he made.  Id. at pp. 6-9; Defendant's Exhibit D, Record Doc. No. 175-3, at p. 11 et seq.  The City suggests that Perricone had ulterior motives, used confidential information obtained from the Department to mislead the City and attempt to "sway the public" via his comments, did not negotiate in good faith and "knowingly misrepresented and concealed [his] blogging, which blogs undermined the integrity and confidentiality of the entire negotiation process."  Record Doc. No. 175-1 at p. 17.

The Department also argues that Knight's attorney work product must be protected, which plaintiff does not contest.  Knight can be represented at the deposition by counsel who can object if the questioning seeks opinion work product as to which the Department has not waived the protections of the work product doctrine and Fed. R. Civ. P. 26(b)(3).  See Fed. R. Civ. P. 30(c)(2) (procedures for objecting at deposition). However, the court will modify proposed deposition topics 4 and 5 because, as written, they are so broad as to include matters not related to disciplinary action against plaintiff and similarly situated others.

Beckett notes that, even if Knight's deposition takes twice as long as Perricone's, it will only last about two hours.  I find that plaintiff's list of deposition topics, as modified by the court below, is appropriately limited and that the Department's argument that its resources will be excessively strained by requiring Knight to appear for her deposition is not based on a rational relationship to the facts.

Many of Judge Fallon's reasons in In re Vioxx for denying the nonparty federal Food and Drug Administration's ("FDA") motion to quash the plaintiffs' subpoena of the FDA's employee, Dr. Graham, and for finding that the FDA's decision was arbitrary and capricious in that case also apply to the Department's stated justifications for refusing to allow Knight to testify in the instant case.

The Department argues that allowing Knight to testify would overtax its limited resources and would create, "at worst, an incentive for criminal defendants and those

aligned therewith . . . to use the liberal discovery rules to advance arguments in a criminal matter."  Justice Department's memorandum in support, Record Doc. No. 63-3, at p. 9.  As Judge Fallon noted concerning similar objections in In re Vioxx,

> Dr. Graham's deposition would not divert the FDA's time or resources or cripple its ability to fulfill its duties.  The PSC [Plaintiffs' Steering Committee] is willing to depose Dr. Graham at any place and any time, such as in the evening or on the weekends, convenient with his schedule. This Court does not see how the deposition of one employee during non-working hours would cripple the FDA's ability to function.
>
> Nonetheless, this Court is not blind to the possible ramifications of its decision.  The FDA's real concern is not a one time deposition of a single employee, but the potential cumulative effect of this Court's ruling. If the Court allows the deposition of Dr. Graham to proceed, the FDA is worried that many other FDA employees may be subpoenaed by [defendant] Merck to counterbalance the effect of Dr. Graham's testimony. In fact, Merck has already indicated its intent to subpoena several FDA employees if the deposition of Dr. Graham is allowed to proceed. Moreover, beyond the present litigation, the FDA is concerned about the aggregate effect that this ruling may have in future cases throughout the country.
>
> The FDA need not go sleepless fearing endless depositions.  This ruling is not a blank check written to the PSC, Merck, or any other litigant. To the extent that Merck may seek its own depositions and to the extent that future litigants may seek depositions in different cases, the FDA is not powerless.  It will be able to file a motion to quash. At that time, this Court, or whichever court the motion is filed in, must make its own determination as to the merits of each individual case.
>
> It is proper that motions, such as those pending before the Court, should be decided on a case-by-case basis.  Discovery motions are heavily based on the individual facts in an individual case.  It would be particularly unwise to quash Dr. Graham's deposition simply because the FDA may at some unknown time in the future become inundated with deposition requests.  Likewise, if this Court were to make such an unsound ruling, it would in effect allow the FDA to implement a practice of denying all deposition requests under the guise of possible, although presently

> nonexistent consequences.  Much as this Court will not write litigants a
> blank check, it will not deal the FDA a trump card.

In re Vioxx, 235 F.R.D. at 345.

The Department further contends that it is legitimately trying to minimize governmental involvement in controversial matters unrelated to official business.  As Judge Fallon indicated, "the deposition of Dr. Graham and the FDA's participation in this MDL will not force the FDA to become embroiled in private litigation.  The production of a fact witness for a single deposition does not make the FDA a part of this litigation." Id. at 346.  The same is true of Knight's deposition in this case.  In addition, Beckett's allegations in this care are related to the United States Attorney's official business, to the extent that the Department may have been seeking to influence the NOPD in its disciplinary decisions through its conduct of the Warren case or Perricone's purported involvement in NOPD training.

"[T]his Court fails to see how disclosure of this information is not in the public interest. . . .  Although it has many purposes and goals, litigation is a fact-finding device designed as a search for the truth."  Id.  As in In re Vioxx, it is important to Beckett to know the truth about the NOPD's decision to terminate her employment.  It  is perhaps more important that the public know whether the NOPD, its servant, acts in accordance with law in making its employment decisions, and whether its other servants, employees of the Department, interpose themselves in those decisions.

Based on this record, I find that the Department acted arbitrarily and abused its discretion in refusing to produce Knight to testify about the limited topics plaintiff seeks. See Ceroni, 793 F. Supp. 2d at 1278-79 (The nonparty federal agency's decision not to allow its employees to respond to deposition subpoenas, written discovery requests and a request to inspect the work site issued by the defendant in a products liability action was arbitrary and unjustified when the information sought was relevant and not subject to any privilege; the deposition time was limited to three hours; the depositions and inspection could be scheduled outside of normal work hours to minimize disruption; the agency's assertion that the evidence was available from some other source was "unsupported and obviously incorrect;" and the information sought was "crucial for the trial court to adjudicate fairly the rights of the parties in the underlying action."); In re Packaged Ice Antitrust Litig., 2011 WL 1790189, at *2, *7-8 (The nonparty Justice Department was not justified in refusing to produce to plaintiffs in civil litigation audio recordings and verbatim transcripts that the Department had compiled in a now-closed criminal investigation of the same defendants as in the civil action. Factors in favor of disclosure were that the recordings and transcripts were factual in nature; public disclosure would not necessarily reveal the nature, scope and direction of the investigation; the government had less need of secrecy in a closed investigation than in an ongoing one; plaintiffs could not obtain the same information by deposing the witnesses because  witness recollections had faded in the years since the recordings were

made; the cooperating witnesses' identities were publicly known; and the information sought was "critically important" to the plaintiffs' case.); Cox v. Mitsubishi Heavy Indus., No. 07-149-P-H, 2007 WL 4287574, at * (D. Maine Dec. 6, 2007) (The court compelled the nonparty Occupational Safety and Health Administration to produce in response to plaintiff's subpoena duces tecum the witness statements taken during OSHA's investigation of the fatal accident at issue in the civil litigation. The "public interest in effective law enforcement . . . [is not] necessarily hampered by the release of the witness statements under the specifically limited circumstances of this case.").

Accordingly, the Department's motion is DENIED to the extent it seeks to quash the subpoena or delay Knight's deposition until after McCabe's and Warren's trials. The motion is GRANTED in part in that deposition topic 4 is modified to add the words "who testified at that trial" at the end of the sentence and deposition topic 5 is modified to delete the words "investigation and/or." Thus, the modified topics read as follows.

4.    Any postings which she may have made on Nola.com or any other website concerning the matter of United States of America v. David Warren et al., E.D. La. No. 10-CR-154 and/or other matters related to plaintiff or other members of the New Orleans Police Department who testified at that trial.

5.    Her knowledge of the manner by which the Justice Department identified those members of the New Orleans Police Department as to whom it was going to recommend discipline by the New Orleans Police Department in the aftermath of the verdict rendered in the matter of United States of America v. David Warren et al., E.D. La. No. 10-CR-154.

IT IS ORDERED that plaintiff's counsel must confer immediately with counsel for Knight to determine a mutually agreeable time and place for Knight's deposition.  If no such agreement can be reached, the court will impose a date, time and place for the deposition.

New Orleans, Louisiana, this _____4th_____ day of March, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

27